UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL RODENHOUSE and
KELLY RODENHOUSE,

|  |  |  |
|---|---|---|
|  | Plaintiffs, | No. 07-CV-6438 CJS |
| -vs- |  |  |
|  |  | DECISION AND ORDER |

PALMYRA-MACEDON CENTRAL SCHOOL
DISTRICT, HAROLD E. FERGUSON, individually
and in his capacity as former Interim Superintendent
of Schools, BARBARA PERSIA, individually and in her
capacity as Principal of the Palmyra-Macedon Senior
High School, FRED CIABURRI, individually and in his
official capacity as Director of Athletics and Physical
Education, THOMAS ENRIGHT, individually and in his
official capacity as a former Head Coach of Indoor
Track and Head Coach of Girl's Outdoor Track at
the Palmyra-Macedon Senior High School, and
DAN ENRIGHT, individually and in his official capacity
as a former Assistant Coach of Indoor/Outdoor Track
and Field and voluntary assistant Cross-County Coach
at the Palmyra-Macedon Senior High School,

Defendants.

_____

APPEARANCES

For Plaintiffs:          Jeffrey Wicks, Esq.
                         Jeffrey Wicks, PLLC
                         36 West Main Street, Suite 101
                         Rochester, New York 14614

1

For Defendants Palmyra-
Macedon Central School
District, Harold E. Ferguson,
Barbara Persia, and Fred
Ciaburri:                          Aimee LaFever Koch, Esq.
                                   Osborn, Reed & Burke, LLP
                                   1 Exchange Street, Suite 400
                                   Rochester, New York 14614


For Defendant
Thomas Enright:                    Kenneth A. Krajewski, Esq.
                                   Ryan J. Mills, Esq.
                                   Brown & Kelly, LLP
                                   1500 Liberty Building
                                   Buffalo, New York 14202


For Defendant
Dan Enright:                       Patrick B. Naylon, Esq.
                                   Goldberg Segalla, LLP
                                   Two State Street, Suite 805
                                   Rochester, New York 14614


## INTRODUCTION

This is an action alleging federal claims under 42 U.S.C. § 1983, 42 U.S.C. §

1985, and Title IX, 20 U.S.C. § 1681, as well as claims under New York State law for

negligence, negligent hiring/retention/supervision, intentional infliction of emotional

distress, negligent infliction of emotional distress, custodial interference, and misuse of

process. Now before the Court are Defendants' motions [#3][#8][#21] to dismiss the

Complaint, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), and Plaintiffs'

cross-motion [#17] for sanctions.  For the reasons that follow, Plaintiffs' motion for

sanctions is denied, Defendants' motions to dismiss are granted with regard to Plaintiffs'

federal causes of action, and Plaintiffs' remaining state-law claims are dismissed

pursuant to 28 U.S.C. § 1367(c)(3).

2

BACKGROUND

The following facts are taken from the Complaint, and are accepted as true for purposes of this motion.  At all relevant times Plaintiffs' daughter E.R. was a student at Palmyra-Macedon High School, and as such, she participated in the school's cross-country and track and field athletic programs.  At all relevant times, Defendant Thomas Enright was the coach of the school's track and field team, and his son Daniel Enright was an assistant track coach.  Also at all relevant times, Defendant Harold Ferguson ("Ferguson") was the Interim Superintendent of the Palmyra-Macedon School District, Defendant Barbara Persia ("Persia") was the Principal of the Palmyra-Macedon High School, and Defendant Fred Ciaburri ("Ciaburri") was the school's Athletic Director. Plaintiffs' claims arise from the fact that, beginning when E.R. was a sixteen-year old student, Daniel Enright made sexual advances toward her, and pursued a romantic relationship with her, which ultimately resulted in E.R. moving out of her family home and residing instead with Daniel Enright and Thomas Enright.

More specifically, Plaintiffs allege that in or about February 2006, Plaintiff Kelly Rodenhouse ("Mrs. Rodenhouse") learned that, in January 2006, Daniel Enright and another male had met with two female high-school track athletes at 4:00 a.m., ostensibly for the purpose of having breakfast.  Mrs. Rodenhouse reported this information to Ciaburri, who apparently took no action with regard to the report.  In or about July 2006, Daniel Enright, in addition to being an assistant track coach, became an assistant coach for the school's cross-country team, of which E.R. was a member.

In November 2006, Plaintiffs learned that Daniel Enright had been making sexual advances toward E.R.  For example, Plaintiffs learned that during the preceding months,

3

Daniel Enright had kissed and fondled E.R.  Plaintiffs contend that Daniel Enright was also having improper relationships with several other female high-school students at the time.  Plaintiffs reported this information to Persia and Ciaburri, and the school district terminated Daniel Enright's employment the same day.  On or about December 7, 2006, Ferguson assured Plaintiffs that Daniel Enright would not be allowed on school property, and that Daniel's father, Thomas Enright, would have no contact with E.R., or any involvement in coaching her.  Nevertheless, Thomas Enright continued to coach E.R., and he also allowed Daniel Enright to serve as an assistant coach at several track meets in December 2006 and January 2007.

On or about January 19, 2007, E.R., who was then age 17, moved out of her family home and into the residence of Daniel Enright and Thomas Enright.  According to Plaintiffs, the Enrights subsequently manipulated E.R. into falsely informing the Department of Social Services that her parents had banished her from the family home.  On January 22, 2007, Plaintiffs informed Ferguson and Persia of these events, and on January 24, 2007, the school district terminated Thomas Enright's employment.

Plaintiffs commenced the instant action on September 7, 2007, at which time E.R. was eighteen years of age.   As discussed earlier, the complaint alleged, *inter alia*, federal claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, based on alleged due process and equal protection violations, as well as a claim for sexual discrimination under Title IX.   However, Plaintiffs subsequently withdrew the Title IX claim.  In lieu of answering the complaint, Defendants filed the subject motions to dismiss, for failure to state a claim, under FRCP 12(b)(6).  In addition to moving to dismiss, Defendants Palmyra-Macedon Central School District, Ferguson, Persia, and Ciaburri ("the District

4

Defendants") also moved for sanctions, on the grounds that Plaintiffs' claims were frivolous, though, as discussed further below, they later withdrew that portion of their motion.  Nevertheless, in support of their motion for sanctions, District Defendants' counsel submitted copies of letters that she had sent to Plaintiffs' counsel, explaining why she believed Plaintiffs' claims were frivolous as a matter of law.  However, she did not include Plaintiffs' counsel's responding correspondence.  Plaintiffs opposed Defendants' motions, and cross-moved for sanctions against the District Defendants.  With regard to Plaintiffs' cross-motion for sanctions, they alleged that District Defendants were attempting to mislead the Court in their motion for sanctions, by failing to include a copy of Plaintiffs' counsel's letter to District Defendants' counsel, explaining why Plaintiffs' claims were meritorious.  Plaintiffs further argued that District Defendants should be sanctioned for not "following the dictates and procedure outlined in Rule 11." (Notice of Motion [#17] at 2).  District Defendants have now withdrawn their motion for sanctions.

On May 29, 2008, Plaintiffs and counsel for all parties appeared before the undersigned for oral argument of the motions.

ANALYSIS

*The 12(b)(6) Standard*

In ruling upon a motion to dismiss made pursuant to FRCP 12(b) (6), the Court must construe

> the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice. To survive dismissal, the plaintiff must provide the grounds upon which her claim rests through factual allegations sufficient to raise a right to relief above the speculative level.

5

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007) (citations and

internal quotation marks omitted).

> *42 U.S.C. § 1983*
>
> The legal principles applicable to claims under Section 1983 are well settled:
>
> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
>
> ***
>
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by:  evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free School Dist.*, 365 F.3d 107, 122, 127 (2d Cir.

2004).

In the instant action, Plaintiffs have alleged violations of their federal constitutional

rights to procedural due process, substantive due process, and equal protection.  With

regard to the due process claims, parents lack standing to bring individual claims under

42 U.S.C. § 1983 to recover for alleged violations of their child's constitutional rights.

*Phillips ex rel. Green v. City of New York*, 453 F.Supp.2d 690, 734 (S.D.N.Y. 2006)

("[P]arents lack standing to bring individual claims under § 1983 based solely upon deprivation of a child's constitutional rights.") (citation omitted).  However, parents may assert claims for the deprivation of their own constitutional rights, arising from the loss of a parent-child relationship. *Id*.  In that regard,

> [t]he right to care and custody of one's child has been recognized as a constitutional procedural and substantive due process right.  Indeed, the Supreme Court has observed that "[t]he liberty interest ... of parents in the care, custody, and control of their children-is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).
> \*\*\*
> The right to family integrity encompasses the interest of the parent in the companionship, care, custody and management of his or her children[.]

*Id*. at 734-35 (citations and internal quotation marks omitted).  However, as one District Court recently held,

> [t]he Second Circuit has not addressed whether state action that has an incidental effect on the parent-child relationship is sufficient to make out a Section 1983 claim on behalf of a parent. The vast majority of circuits considering the issue, however, have "expressly declined to find a violation of the familial liberty interest where the state action at issue was not aimed specifically at interfering with the relationship." *Russ v. Watts*, 414 F.3d 783, 787-88 (7th Cir.2005) (citing cases). The Court agrees and concludes that there is no constitutional harm to a plaintiff's parental rights cognizable under Section 1983 unless the parent-child relationship itself has been targeted. *See McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir.2003) ("It would ... stretch the concept of due process too far if we were to recognize a constitutional violation based on official actions that were not directed at the parent-child relationship.").

*Torres v. Howell*, No. 3:03CV2227 (MRK)(WIG), 2006 WL 1525942 at *8 (D.Conn. May 30, 2006).

With regard to procedural due process, it is clear that, "before parents may be deprived of the care, custody or management of their children without their consent, due process --ordinarily a court proceeding resulting in an order permitting removal --must

be accorded to them." *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999).  On the other hand, "[f]or a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (citations omitted).

In the instant case, the complaint fails to state either type of due process claim.  In that regard, Plaintiffs' complaint alleges, in conclusory fashion, that "[a]cting under the color of law, Defendants deprived Plaintiffs of their custodial parental right to familial integrity, that is, they deprived [Plaintiffs] of their rights to custody, care, and companionship of [E.R.]." (Complaint ¶ 114).  However, the Complaint fails to allege any facts to support a plausible claim that Defendants "deprived" them of the care, custody or management of E.R. within the meaning of the due process clause.  Nor are there any allegations to support a plausible claim that Defendants took official actions directed at the parent-child relationship.  Instead, it appears clear that the unfortunate disruption of the parent-child relationship in this case was only incidental to Defendants' alleged actions and omissions in failing to properly supervise and protect E.R. *See, Pittsley v. Warish*, 927 F.2d 3, 9 (1st Cir. 1991) ("We do not believe the liberty interest protected by the substantive due process clause was intended to protect every conceivable family relationship from governmental interference, no matter how far removed, especially when the resulting deprivation is only an incidental result of that conduct."), *cert. den*. 502 U.S. 879, 112 S.Ct. 226 (1991).  Nor does the complaint allege *governmental conduct* that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.  Consequently, the complaint fails to state actionable due process claims.

8

*Equal Protection*

Plaintiffs also allege a "class of one" equal protection claim.  The legal principles

concerning a "class-of-one" equal protection claim are clear:

> The equal protection clause directs state actors to treat similarly situated
> people alike.  An equal protection claim requires purposeful discrimination,
> directed at an identifiable or suspect class.  It is possible for [a plaintiff] to
> allege a  'class of one,' where the plaintiff alleges that he has been
> intentionally treated differently from others similarly situated and that there
> is no rational basis for the difference in treatment.  Under the "class of one"
> theory of equal protection, a plaintiff is required to show either that there
> was no rational basis for the unequal treatment received or that the denial
> of the application was motivated by animus.

*Foy v. City of New York*, No. 03 Civ. 7318(HB), 2004 WL 2033074 at *3 (S.D.N.Y. Sep.

10, 2004) (citations and internal quotation marks omitted).  With regard to demonstrating

such disparate treatment, the Second Circuit Court of Appeals has stated

> that class-of-one plaintiffs must show an extremely high degree of similarity
> between themselves and the persons to whom they compare themselves.
> This showing is more stringent than that used at the summary judgment
> stage in the employment discrimination context.  This is because the
> existence of persons in similar circumstances who received more favorable
> treatment than the plaintiff in a class-of-one case is offered to provide an
> inference that the plaintiff was intentionally singled out for reasons that so
> lack any reasonable nexus with a legitimate governmental policy that an
> improper purpose-whether personal or otherwise-is all but certain.
> Accordingly, to succeed on a class-of-one claim, a plaintiff must establish
> that (i) no rational person could regard the circumstances of the plaintiff to
> differ from those of a comparator to a degree that would justify the
> differential treatment on the basis of a legitimate government policy; and (ii)
> the similarity in circumstances and difference in treatment are sufficient to
> exclude the possibility that the defendants acted on the basis of a mistake.
>
> Generally, whether parties are similarly situated is a fact-intensive inquiry.
> A court may grant summary judgment in a defendant's favor on the basis of
> lack of similarity of situation, however, where no reasonable jury could find
> that the persons to whom the plaintiff compares itself are similarly situated.

*Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citations and internal

9

quotation marks omitted).

Here, the complaint does not allege that Plaintiffs, as the parents of E.R., were singled out for purposeful discrimination by Defendants, nor does it allege that other similarly-situated parents were treated more favorably.  Accordingly, the complaint fails to state an equal protection claim.

*42 U.S.C. § 1985*

Plaintiffs also contend, pursuant to 42 U.S.C. § 1985, that Defendants conspired to violate their federal constitutional rights.  Specifically, the complaint alleges: "Plaintiffs are informed and believe, and therefore allege that there was an agreement between Defendants, and each and every one of them, to deprive Plaintiffs of their right to Equal Protection." (Complaint ¶ 135).  However, as already discussed, the complaint fails to allege an equal protection claim, or any other constitutional violation for that matter.  Additionally, such conclusory allegations of a conspiracy are insufficient to state a claim under 42 U.S.C. § 1985. *See, Webb v. Goord*, 340 F.3d 105, 111 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail.") (citation omitted).  Accordingly, the Section 1985 claim is dismissed.

*Dismissal of the remaining state-law claims*

The Court has supplemental jurisdiction over Plaintiffs' state-law claims, pursuant to 28 U.S.C. § 1367(a), however, that statute further provides that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §

10

1367(c).  Since all of Plaintiffs' federal claims must be dismissed, the Court declines to

exercise jurisdiction over Plaintiff's state-law claims.  Accordingly, those claims are

dismissed without prejudice.


     *Plaintiffs' motion for sanctions*

     Plaintiffs contend that sanctions should be imposed against the District

Defendants, pursuant to Rule 11(c), for making misrepresentations to the Court, and for

failing to follow the procedures in Rule 11 when they moved for sanctions as part of their

motion to dismiss.  The decision whether to grant sanctions under Rule 11 lies within the

discretion of the district court. *See, Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 219

(2d Cir. 2002).  In the instant case, the Court declines to grant Plaintiffs' application for

sanctions.  In that regard, the Court determines that, although it would have been better if

District Defendants' counsel had submitted Plaintiffs' counsel's letter, it does not appear

that there was any intention to mislead the Court.  Additionally, the Court finds that

District Defendants' motion was not "presented for any improper purpose."

Consequently, Plaintiff's cross-motion for sanctions and costs is denied.

CONCLUSION

     For the foregoing reasons, Plaintiffs' motion for sanctions is denied [#17],

Defendants' motions [#3][#8][#21] to dismiss are granted with regard to Plaintiffs' federal

causes of action, and Plaintiffs' remaining state-law claims are dismissed pursuant to 28

U.S.C. § 1367(c)(3).  The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Rochester, New York
       June 2 , 2008

ENTER:


/s/ Charles J. Siragusa_____
CHARLES J. SIRAGUSA
United States District Judge